IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2008

Charles R. Fulbruge III
Clerk

No. 07-11247

ENVIRONMENTAL CONSERVATION ORGANIZATION

Plaintiff-Appellant

v.

CITY OF DALLAS

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:03-cv-02951

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The Environmental Conservation Organization ("ECO") was denied attorneys' fees incurred during its Clean Water Act ("CWA") citizen suit against the City of Dallas ("City"). We AFFIRM.

I. Background

The background to this case is described in an earlier opinion. Envtl. Cons'n Org. v. City of Dallas, 529 F.3d 519 (5th Cir. 2008), cert. denied, 129 S. Ct. 418 (2008). Briefly, ECO is a non-profit environmental watch group based

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in Dallas. In mid-2003, it notified the City about certain CWA violations involving the City's storm sewer system. At the end of that year, ECO filed suit against the City. Simultaneously, or nearly so, the U.S. Environmental Protection Agency was conducting its own investigation. The EPA filed its own enforcement action against the City in 2006. ECO declined to intervene in the EPA's suit despite being encouraged to do so by the district court.

The action brought by the EPA was resolved with a consent decree. Thereafter, the district court granted Dallas's motion for summary judgment in ECO's suit, concluding that it was barred by res judicata. On appeal, we affirmed on the alternative basis that ECO's suit had become moot due to the outcome of the EPA's suit. ECO's request for attorneys' fees in the suit has been traveling at a different pace but has now reached us. Fees are allowed under the Clean Water Act "to any prevailing or substantially prevailing party" in a CWA citizen suit. 33 U.S.C. § 1365(d). The district court denied attorneys' fees, finding that ECO's failure to join the EPA suit meant that it was not a party, did not obtain any judicially enforceable rights, and therefore did not prevail wholly or substantially. The court also denied fees under the theory that ECO had been a catalyst to the result, a theory we will analyze below.

## II. Analysis

Many components of a district court's decision on an award of attorneys' fees are reviewed for an abuse of discretion. Riley v. City of Jackson, 99 F.3d 757, 759 (5th Cir. 1996). On the other hand, our review of "the characterization of prevailing-party status for awards under fee-shifting statutes" is de novo. Bailey v. Mississippi, 407 F.3d 684, 687 (5th Cir. 2005). As usual, fact-findings are reviewed only for clear error. Riley, 99 F.3d at 759.

ECO challenges the district court's determination that it was not a prevailing party under a conventional understanding of what it means to be a prevailing party. In the alternative, it argues that it qualified as a prevailing

party under the "catalyst" theory. As it acknowledges, ECO must overcome the argument that such a theory under the CWA has not survived recent precedents. See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001); Bailey, 407 F.3d 684.

A three-part test is used to identify prevailing parties. A plaintiff must: "(1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." Dearmore v. City of Garland, 519 F.3d 517, 521 (5th Cir. 2008). The test is written in the conjunctive, such that each of the three elements must be satisfied.

ECO is candid that no Fifth Circuit precedent has found these criteria to be met under circumstances similar to those applicable here. It instead relies on caselaw from other circuits. We conclude that two of the precedents are more accurately described as having been decided under a catalyst theory, not conventional prevailing party standards. See Armstrong v. ASARCO, Inc., 138 F.3d 382 (8th Cir. 1998); Atl. States Legal Found. v. Eastman Kodak Co., 933 F.2d 124 (2d Cir. 1991). We temporarily reserve our review of those.

The third precedent was indeed decided under the conventional theory. Sierra Club v. Hamilton County Bd. of Comm'rs, 504 F.3d 634 (6th Cir. 2007). Whereas ECO refused to participate in the EPA suit, the Sierra Club plaintiff intervened in the government's CWA action; the court consolidated the citizen plaintiff's case with the government's; and the plaintiff had substantial input into the consent decree. Id. at 639-40. Those facts are consistent with our prior holdings that "a plaintiff 'prevails' when actual relief on the merits of [its] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Bailey, 407 F.3d at 688.

As previously mentioned, ECO's suit against the City was found to be moot once the EPA consent decree was entered. Consequently, ECO could not, by virtue of a dismissed suit, have "obtain[ed] actual relief," or a material alteration of the "legal relationship between the parties." The EPA, not ECO, obtained relief. ECO has no more right to enforce the consent degree than any other non-party. These facts compel the conclusion that ECO was not a prevailing party under the conventional definition of that term.

It is true that the CWA also permits fees to a "substantially prevailing party," a phrase which retains the need to "prevail" but reduces the degree to which that must occur. 33 U.S.C. § 1365(d). Thus, the three elements of our analysis may not need to be satisfied in full. However, we conclude that each of those elements remains a factor in whether a party has prevailed at all. ECO must show why it largely, i.e., substantially, satisfied those factors. ECO obtained no court-ordered relief modifying the City's behavior. Thus, ECO was also not a substantially prevailing party.

We turn now to ECO's catalyst-theory argument. In one appeal, we described a district court's decision awarding attorneys' fees as "reminiscent of pre-Buckhannon practice 'to assess the provocative effect of the plaintiff's lawsuit.'" Bailey, 407 F.3d at 689 (quoting Hennigan v. Ouachita Parish Sch. Bd., 749 F.2d 1148, 1152 (5th Cir. 1985)). ECO's argument similarly encourages us to journey to a prior legal world and find that it is entitled to attorneys' fees because its suit provoked the EPA's successful action. The bridge back would be built on the CWA's wording that fees may be awarded to "substantially prevailing" parties – not just to "prevailing parties," as was the case in the statutes as issue in Buckhannon and Bailey.

Only a few precedents post-Buckhannon use analysis similar to the catalyst theory. One that did so applied the Endangered Species Act's fee-shifting provision. Assoc. of Cal. Water Agencies v. Evans, 386 F.3d 879 (9th Cir.

4

2004). The court explicitly categorized the plaintiff's role as being that of a catalyst, and on that basis justified fees. Id. at 886. The statute, though, permits an award to "any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). A requirement that a party prevail, as in Buckhannon, or prevail to a substantial degree, as here, is not present in the statutory language analyzed in Evans. We find Evans inapplicable.

Other post-Buckhannon caselaw supports the proposition that slight linguistic differences in an attorneys' fee statute – including the "substantially prevailing" language – do not reinstate the catalyst theory.[1] ECO complains that these decisions eliminate the "substantially prevailing" language from the statute. We disagree. Though we have not defined precisely what it means to prevail substantially, we discussed above that our three-factor test remains relevant, with a party needing to demonstrate how it substantially satisfied those factors. Moreover, ECO has not explained how the use of this extra word in the statute restored the catalyst theory, whatever else it might have done.[2]

The district court, in addition to determining that the catalyst theory did not survive under the CWA, adopted findings that ECO was not a catalyst anyway. The catalyst theory required that a party show "(1) that the relief

---

[1] See Kasza v. Whitman, 325 F.3d 1178, 1180 (9th Cir. 2003) (holding that Buckhannon rendered the catalyst theory inapplicable to the fee-shifting provision in the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(e), which authorizes awards "to the prevailing or substantially prevailing party"); Union of Needletrades, Indus., & Textile Employees v. INS, 336 F.3d 200, 204-05 (2d Cir. 2003) (rejecting application of the catalyst theory to a Freedom of Information Act fee-shifting provision, 5 U.S.C. § 552(a)(4)(E), which uses the phrase "substantially prevailed"); Oil, Chem., & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 455 (D.C. Cir. 2002) (treating "'substantially prevail' language in FOIA as the functional equivalent of the 'prevailing party' language found in other statutes").

[2] ECO's extensive reliance on Sierra Club in its conventional-theory argument undercuts its applicability to the catalyst-theory argument. The Sierra Club court disavowed reliance on the catalyst theory, finding that it had been "called into question" by Buckhannon. 504 F.3d at 643. Thus, the case with the factual outcome most favorable to ECO recognized the post-Buckhannon infirmities of the catalyst theory with respect to the CWA.

sought by the plaintiff was in fact obtained, and (2) that the suit itself caused the defendant to alter its conduct." Foreman v. Dallas County, 193 F.3d 314, 320 (5th Cir. 1999). Most relevant here, to show causation, "the lawsuit must have been 'a substantial factor or a significant catalyst' in motivating the defendants to alter their behavior. Id. at 321.

Some facts are in dispute, but the crux of the issue is the extent to which ECO's pre-suit notice letters were the impetus of the EPA's investigation, as opposed to the EPA's investigation being the cause of ECO's interest in the case. ECO concedes that the EPA contacted the city first, but argues that the EPA's interest was vague and general until it converted 150 specific CWA violations first discovered by ECO into its own lawsuit. The district court appeared to accept the City's theory that the 150 specific violations originated in a spreadsheet prepared by the City in response to the EPA's investigation. That information was then leaked by whistleblowing City employees to ECO. Under this explanation, ECO was not the first to identify the violations.

There is no reason to question ECO's good faith in the conduct of its investigation and lawsuit. We also find no reason to set aside the district court's finding that ECO was not a catalyst. Thus, even if that theory has any relevance under the CWA, and we do not hold that it does, it would not apply here.

The judgment of the district court is AFFIRMED.